IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BERT ALONZO SAYLOR, #170237,

Plaintiff

v.

JAMES DELOACH, et al,

Defendants

CASE NO.: 2:05-CV-536-MHT

## SPECIAL REPORT OF DEFENDANTS DELOACH WAMBLE AND HELMS

Come now the Defendants James Deloach, Joseph Womble and Vince Helms, by and through counsel, to submit their Special Report unto this Honorable Court as ordered by the Court on 3 February 2006.

## PARTIES

1. Bert Alonzo Saylor, #170237, the Plaintiff, was an inmate at Draper Correctional Facility at all times pertinent to his Complaint. He is presently incarcerated at Donaldson Correctional Center.

2. Defendant James Deloach is employed by the Department of Corrections as a Warden III at Draper Correctional Facility and was at all times pertinent to the Complaint.

3. Defendant James Womble is employed as a Correction Officer Supervisor II (Captain) at Draper Correctional Center by the Department of Corrections and was at all times pertinent to the Complaint.

4. Defendant Vince Helms is employed as a Correctional Officer Supervisor (Lieutenant) at Draper Correctional Center by the Department of Corrections and was at all times pertinent to the Complaint.

## PLAINTIFF'S ALLEGATIONS

The Plaintiff alleges that during the period of 5 February 2005 until 21 March 2005, inmates in the Draper Correctional Center segregation unit had inadequate access to courts due to inadequate access to the law library and notary services. Nor, the Plaintiff complains, was there available any collaboration in the "Law Library Research Possialbe [sic]." The Defendants take this allegation to mean that the Plaintiff thought that he should have enjoyed the assistance of writ writers while he was in the segregation unit.

The Plaintiff alleges that there is no sprinkler system throughout the Draper Correctional Center segregation unit, which has accommodations for 46 inmates, and that this is a fire hazard which endangers the lives of inmates.

The Plaintiff avers that the Draper segregation unit is unhealthy because the personal laundry of the inmates in segregation is not washed nor does the state make clothing exchanges for the inmates so that they can have clean clothing. In addition, the Plaintiff alleges that the shower in segregation is unhealthy because there are not any rubber mats inside or outside of the shower area and that the lack of rubber mats constitutes a health hazard.

## DEFENDANTS' RESPONSE TO ALLEGATIONS

1. The Complaint fails to state a claim upon which relief can be granted.

2. The Defendants assert that they are immune from suit pursuant to the Eleventh Amendment to the United States Constitution and Article I, Section 14 of the Alabama Constitution of 1901.

3. The Defendants assert that they are entitled to the benefits of qualified immunity and discretionary function immunity.

4. Under 42 U.S.C. 1983, respondeat superior is not available to find an individual liable.

5. The Defendants deny each and every material allegation of the complaint and demand strict proof thereof.

## DEFENDANTS' EXHIBITS

1. Affidavit of Lt Vince Helms.
2. Affidavit of Warden III James Deloach with an attachment, to wit, Draper SOP 5-70, The Segregation Unit.
3. Affidavit of CPT James Womble.

## STATEMENT OF THE UNDISPUTED FACTS

The Plaintiff escaped from the custody of the Department of Corrections and was housed in the Draper Correctional Center segregation unit after he was recaptured. (Exhibit 2, Deloach Affidavit).

Inmates housed in the segregation unit can request legal reference books and other materials daily. (Exhibit 2, Deloach Affidavit). The inmates submit a request slip to the segregation officer for the legal materials and books. (Exhibit 1, Helms Affidavit) An

inmate law clerk takes the written request, locates the material sought and delivers it to the requesting inmate in segregation. Each inmate is advised of this procedure during the intake into segregation. (Exhibit 3, Womble Affidavit). A notary is available at least once a week. (Exhibit 2, Deloach Affidavit). In fact, there is a notary available during each shift that is available for the inmates in segregation at least once a week. (Exhibit 1, Helms Affidavit).

Draper Correctional Center does not have a sprinkler system, but there is fire extinguishing equipment in the segregation dorm consisting of fire extinguishers and a fire hose. (Exhibit 1, Helms Affidavit). Indeed, there are five fire extinguishers in segregation and the high pressure fire hose has an adjustable nozzle. (Exhibit 3, Womble Affidavit; Exhibit 2, Deloach Affidavit). Draper Correctional Center meets the standards set forth in the Fire Codes that are enforced by the State Fire Marshal. (Exhibits 1, 2 and 3).

Draper Correctional Facility does not have an in-house laundry but inmate laundry is sent to the central laundry at Elmore Correctional Center daily. Laundry service is provided daily to the inmates in the segregation unit, and the Plaintiff was aware of this. The jumpsuits worn by the inmates in the segregation unit are changed out every other day. (Exhibits 1, 2, and 3, Affidavits of Helms, Deloach and Womble).

The segregation unit showers have a non skid surface (Exhibit 2, Deloach Affidavit) and do not have rubber mats because they are a breeding ground for fungus, mold and mildew, being very unsanitary. (Exhibit 1, Helms Affidavit). The segregation unit is cleaned daily with soaps and disinfectants by an inmate who is assigned the

housekeeping duties. As a further safeguard, the inmates are allowed to keep and use shower sandals. (Exhibit 3, Womble Affidavit).

All inmates are informed of these matters upon intake into the segregation unit. The procedures are set forth in Draper SOP 5-70, The Segregation Unit. (Exhibit 2, Deloach Affidavit with attachment).

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the Plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of facts become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317

(1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.
> 898 F.2d at 1532.

**ARGUMENT**

**Access to Law Library**

The Plaintiff alleges that there inadequate access to the courts for inmates in the segregation unit of Draper Correctional Center because of inadequate access to the law library to notary services at Draper and to writ writers during the period 5 February 2005 to 21 March 2005. He does not state any facts to support his claim but rather just his conclusory allegations. The Plaintiff does not allege that he has suffered any actual harm or injury concerning any legal claim as a result of the alleged lack of access.

Prisoners have a right to access to the courts under the Fourteenth Amendment. *Wilson v. Blankenship,* 163 F.3d 1284, 1290 (11th Cir.1998) (citing *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977)). To the extent that prisoners have a right of access to a law library, this right is dependent on their right to access to the courts. *Id.* (citing *Lewis v. Casey,* 518 U.S. 343, 349-351, 116 S.Ct. 2174, 2179- 80, 135 L.Ed.2d 606 (1996)). Prisoners must do more than show interference with their right to a law library; they must also show actual harm. *Lewis,* 518 U.S. at 351, 116 S.Ct. at

2180 ("[T]he inmate[s] therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered [their] efforts to pursue a legal claim.") Further, only specific types of legal claims are protected by this right, namely, the nonfrivolous prosecution of either a direct appeal of a conviction, a habeas petition, or a civil rights suit. *Bass v. Singletary,* 143 F.3d 1442, 1445 (11thCir.1998).

A prisoner's standing in these cases requires showing an actual injury to the prosecution of one of these actions. *Id.* (citing *Lewis*, 518 U.S. at 349-350, 116 S.Ct. at 2179). The Supreme Court has explained that "each element [of standing] must be supported ... with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lewis,* 518 U.S. at 358, 116 S.Ct. at 2183 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 2136-37, 119 L.Ed.2d 351 (1992)).

In this case presently before this Honorable Court, the Defendants filed a motion for summary judgment by the submission of this Special Report. The Plaintiff must put forth evidence demonstrating that there was a genuine issue of material fact as to whether he suffered actual injury, i.e. whether Defendants' actions frustrated their presentation of a direct appeal from their convictions, a habeas petition, or a civil rights action. *See Lewis,* 518 U.S. at 352-57, 116 S.Ct. at 2181-82; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); *Hammer v. Slater,* 20 F.3d 1137, 1141 (11th Cir.1994). In the absence of a genuine issue of material fact as to

whether the Plaintiff suffered actual injury, judgment should be entered in favor of the Defendants because the Plaintiff has not demonstrated that he has standing. *F.R. Civ. Pro. Rule 56.(c).*

However, in the unlikely event that the Plaintiff is able to sufficiently prove standing to litigate his claim of lack of access to the courts caused by lack of access to the law library and notarial services, the Defendants assert that the undisputed facts of this case as set forth in their affidavits and the policies set forth in Draper SOP 5-70, section Q, Law Library and Access to the Court, page 14, prove that the Plaintiff was not denied access to the courts.

Perhaps the real concern of the Plaintiff was the lack of collaboration with a writ writer due to being held in the segregation unit. There is no requirement that the state furnish an inmate both access to a law library and his own paralegal. In *Bounds v. Smith,* 430 U.S. 817, 817, 97 S.Ct. 1491, 1492-93, 52 L.Ed.2d 72 (1977), the Court considered "whether States must protect the right of prisoners to access to the courts by providing them with law libraries or alternative sources of legal knowledge." The Court answered that question in the affirmative, holding:

> "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries ***or*** adequate assistance from persons trained in the law." [Emphasis Supplied]

*Bounds,* 430 U.S. at 828, 97 S.Ct. at 1498.

The operative term in the holding by the Supreme Court in *Bounds* as it applies to the Plaintiff is "or" signifying the existence of a viable alternative. The state must provide the Plaintiff with either access to an adequate law library or assistance from persons trained in the law. The State of Alabama supplies prisoners in the Draper Correctional Center segregation unit with adequate access to an adequate law library as set forth in Draper SOP 5-70 and summary judgment for the Defendants should be granted. *F. R. Civ. P. Rule 56 (c).*

**Conditions of Confinement**

The Plaintiff alleges that the conditions of his confinement violate the Eighth Amendment's prohibition against cruel and unusual punishment made applicable to the states by the Fourteenth Amendment.

The Eighth Amendment protects incarcerated prisoners from punishment that is "cruel and unusual." *Whitley v. Albers,* 475 U.S. 312, 318, 106 S.Ct. 1078, 1083, 89 L.Ed.2d 251 (1986); *see also Ingraham v. Wright,* 430 U.S. 651, 664, 97 S.Ct. 1401, 1408-09, 51 L.Ed.2d 711 (1977). Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain ..., the infliction of pain totally without penological justification ..., [and] the infliction of punishment grossly disproportionate to the severity of the offense." *Ort v. White,* 813 F.2d 318, 321 (11th Cir.1987) (citing *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59 (1981)). Further, "[t]he 'cruel and unusual punishments' standard applies to the conditions of a prisoner's confinement." *Chandler v. Crosby,* 379 F.3d 1278, 1288 (11th Cir.2004) (citing *Rhodes,* 452 U.S. at 345-46, 101 S.Ct. at 2398- 99). The Eighth Amendment,

however, "does not authorize judicial reconsideration of 'every governmental action affecting the interests or well-being of a prisoner.'" *Campbell v. Sikes,* 169 F.3d 1353, 1362 (11th Cir.1999) (quoting *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986)). Furthermore, "the Constitution does not mandate comfortable prisons." *Rhodes,* 452 U.S. at 349, 101 S.Ct. at 2400. "If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'" *Chandler,* 379 F.3d at 1289 (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399). Prison conditions violate the Eighth Amendment only when they "involve the wanton and unnecessary infliction of pain." *Id.*

In *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the United States Supreme Court reiterated the State's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.... The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs--*e.g.,* food, clothing, shelter, medical care, and reasonable safety--it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. *DeShaney,* 489 U.S. at 199-200, 109 S.Ct. at 1005-1006 (citations omitted).

In order to prevail on an Eighth Amendment inhumane conditions of confinement claim, an inmate must make both an objective and a subjective showing. First, the inmate must prove that the conditions of confinement were, "objectively, 'sufficiently serious'" '

so as to amount to the denial of a basic human need. *Chandler*, 379 F.3d at 1289 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992)). A prisoner must prove the denial of "the minimal civilized measure of life's necessities." *Chandler*, 379 F.3d at 1289 (quoting *Rhodes*, 452 U.S. at 347, 101 S.Ct. at 2399). The challenged condition must be "extreme." *Id.* Although an inmate "need not await a tragic event" before seeking relief, *Helling v. McKinney*, 509 U.S. 25, 33, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id.* at 35, 113 S.Ct. at 2481. Moreover, the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Id.* at 36, 113 S.Ct. at 2482.

Second, the inmate must prove that the prison official was subjectively "deliberately indifferent" to a substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 828-29, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer,* 511 U.S. at 838, 114 S.Ct. at 1979. In addition, prison officials are not liable even if they actually knew of a risk if they responded reasonably to the risk. *Farmer,* 511 U.S. at 844, 114 S.Ct. at 1982-83. Moreover, "[a] plaintiff must also show that the constitutional violation caused his injuries." *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1028 (11 th Cir.2001) (en banc) (alteration in original).

The Plaintiff alleges that the segregation unit at Draper Correctional Center does not have a sprinkler system in case of fire and that constitutes a hazardous condition that threatens the safety of inmates in violation of the Eighth Amendment. Fire safety is a legitimate concern under the Eighth Amendment. *See, e.g., Santana v. Collazo,* 714 F.2d 1172, 1183 (1st Cir.1983); Ruiz v. Estelle, 679 F.2d 1115, 1152-53 (5th Cir.1982).

In *Williams v. Edwards,* 547 F.2d 1206, at 1214 (5th Cir. 1977), the Fifth Circuit held that state fire and sanitation codes indicate 'evolving notions of decency' and that use of such codes allows federal district judges to minimize intrusion into details of state prison administration. The United States District Courts in Alabama have applied the fire codes as enforceable standards for places of incarceration in Alabama. *Nicholson v. Choctaw County, Alabama,* 498 F. Supp 295 (S.D. Ala. 1980), *Adams v. Mathis,* 458 F.Supp. 302, 308-309 (M.D.Ala.1978). The undisputed evidence is that the Draper Correctional Center, including the segregation unit, meets fire code standards as required by the State Fire Marshall. (Exhibit 1, Helms Affidavit). The Plaintiff simply has failed to prove the existence of a dangerous condition that poses an unreasonable risk of serious

damage to his future health. *Helling v. McKinney,* 509 U.S. 25, 35, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993).

The Plaintiff alleges that the showers in the segregation unit are unsafe because they lack rubber mats . The undisputed evidence submitted by the Defendants establishes that rubber mats themselves constitute a health hazard, that the showers have non skid surfaces and are cleaned on a daily basis. The Plaintiff simply has failed to prove the existence of a dangerous condition that poses an unreasonable risk of serious damage to his future health. *Helling v. McKinney,* 509 U.S. 25, 35, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993).

The Plaintiff alleges that Draper does not have a laundry and that the segregation unit inmates must wear dirty clothing as a result thereof. The evidence submitted by the Defendants establishes that Draper utilizes the laundry facilities of the nearby Elmore Correctional Center, that the clothes worn by the segregation unit prisoners are laundered on a regular basis and that the jumpsuits that are worn in the segregation unit are exchanged for clean jumpsuits every other day. The Plaintiff simply has failed to prove the existence of a dangerous condition that poses an unreasonable risk of serious damage to his future health. *Helling v. McKinney,* 509 U.S. 25, 35, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993).

**Immunities and Defense of Respondeat Superior**

The Plaintiff named as Defendants Warden James Deloach, Captain Joseph Womble and Lieutenant Vince Helms but did not specify whether the civil action was filed against them in their official capacity or individually. He seeks both damages and injunctive relief so the Defendants assume that they are sued individually as well as in their official capacities.

The Defendants in their official capacity are immune from suit pursuant to the Eleventh Amendment and Article I, § 14 of the Alabama Constitution of 1901. When a government defendant is sued in his official capacity under federal law, the claim is treated as a claim directly against the state or local government entity. Consequently the Defendants are protected by sovereign immunity under the Eleventh Amendment for claims for money damages against them in their official capacities. *Jackson v. Georgia Dep't of Trans.*, 16 F 3d 1573, 1575 (11th Cir. 1994); *Lancaster v. Monroe County, Ala.*, 116 F. 3d. The Defendants have not consented to suit nor have they waived their right to sovereign immunity. The State of Alabama has not consented to suit or waived its right to sovereign immunity as evidence by § 14, Alabama Constitution of 1901.

Sued in their individual capacities also, the Defendants are entitled to the protection of qualified immunity. Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Dalrymple v. Reno,* 334 F.3d 991, 994 (11th Cir.2003)(quoting *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). In determining whether qualified immunity is appropriate in a given case, "[t]he

court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right." *Dalrymple,* 334 F.3d at 995 (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). In this particular case, the facts taken in the light most favorable to the Plaintiff fails to show that the Defendants' conduct violated the Plaintiff's constitutional rights and therefore the Defendants are entitled to the protection of qualified immunity.

From the paucity of facts alleged by the Plaintiff, it is difficult to determine whether he seeks to hold the three Defendants, all holding leadership roles in the prison, liable for the conduct of their subordinates. The Plaintiff has generally failed to allege facts that would sustain a finding that any of his constitutional rights have been violated but if the court should think otherwise, the law is well settled that defendants cannot be held liable, individually or in their official capacities, for actions brought pursuant to 42 U.S. C. § 1983 under the doctrine of respondeat superior or on the basis of vicarious liability. *Belcher v. City of Foley,* 30 F.3d 1390, 1396 (11th Cir 1994); *Brown v. Crawford*, 906 F. 2d 667, 671 (11th Cir. 1990); *Zatler v. Wainwright,* 802 F. 2d 397, 401 (11th Cir. 1986).

**CONCLUSION**

The Defendants respectfully submit that there is no genuine issue as to any material fact and that the Defendants are entitled to a judgment as a matter of law.

Respectfully submitted on this the 15th day of March, 2006.

TROY KING
ATTORNEY GENERAL

/s/Jack Wallace, Jr.
Jack Wallace, Jr. (WAL047)
ASSISTANT ATTORNEY GENERAL

ADDRESS OF COUNSEL:
Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7300

**CERTIFICATE OF SERVICE**

I hereby certify that I have, this the 14th day of March, 2006, electronically filed the foregoing with the Clerk of Court using the CM/ECF and served a copy of the foregoing upon the Plaintiff, by placing same in the United States Mail, postage prepaid and properly addressed as follows:

Bert Alonzo Saylor, # 170237
Donaldson Correctional Facility
100 Warrior Lane
Bessemer, AL 35023-7299

/s/Jack Wallace, Jr.
Jack Wallace, Jr.
ASSISTANT ATTORNEY GENERAL